CAMPHOR TECHNOLOGIES, INC. *v.* BIOFER, S.P.A.

Superior Court, Judicial District of New London
File No. CV-06-4005925S

Memorandum filed January 4, 2007

*Polito & Quinn, LLC*, for the plaintiff.

*Pullman & Comley, LLC*, and *Langer & Grogan, PC*, pro hac vice, of the Pennsylvania bar, for the defendant.

HON. D. MICHAEL HURLEY, JUDGE TRIAL REFEREE. The plaintiff, Camphor Technologies, Inc., a Connecticut corporation, brings this one count complaint and motion to compel arbitration against the defendant, Biofer, S.P.A., an Italian corporation. Before filing the complaint, the plaintiff made a demand for arbitration via registered mail pursuant to the parties' exclusive distributorship agreement.[1] The defendant did not respond to the plaintiff's demand for arbitration, and the plaintiff subsequently served process on the defendant in Italy by registered mail, return receipt requested, seeking to compel arbitration.

On July 11, 2006, the defendant filed a motion to dismiss accompanied by a memorandum of law in support of the motion. The defendant moves to dismiss the plaintiff's complaint on the ground of lack of personal jurisdiction due to insufficient service of process on a foreign corporation. In response, on August 22, 2006, the plaintiff filed a memorandum of law in opposition

---

[1] Paragraph ten of the exclusive distributorship agreement between the parties includes an arbitration provision entitled "Miscellaneous" and provides: "In the event of any dispute arising out of or relating to this agreement, either party may require that such dispute be resolved through final and binding arbitration. Such arbitration shall take place in the United States court in accordance with the applicable Arbitration Rules ('The Rules'). The number of arbitrators shall be one, and the arbitrator shall be selected by agreement of the parties or, failing such agreement, shall be selected according to the relevant Rules. The parties shall bear the costs of such arbitrator equally. If either party seeks judicial enforcement or review of such award, judgment may be entered upon such award in any court of competent jurisdiction. In the event the parties seek arbitration for this agreement, [Biofer, S.P.A.] shall not make any sales, directly or indirectly, through affiliates or otherwise, until such arbitration has been concluded and resolved."

to the defendant's motion to dismiss. The matter was heard at short calendar on September 18, 2006, where the defendant conceded actual notice.

I

## DISCUSSION

"A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 211, 897 A.2d 71 (2006). "Facts showing the service of process in time, form and manner sufficient to satisfy the requirements of mandatory statutes in that regard are essential to jurisdiction over the person." (Internal quotation marks omitted.) *Bridgeport* v. *Debek*, 210 Conn. 175, 179–80, 554 A.2d 728 (1989). "One who is not served with process does not have the status of a party to the proceeding. . . . A court has no jurisdiction over persons who have not been made parties to the action before it." *Security Ins. Co. of Hartford* v. *Lumbermens Mutual Casualty Co.*, 264 Conn. 688, 722, 826 A.2d 107 (2003).

"Proper service of process is not some mere technicality. Proper service of process gives a court power to render a judgment which will satisfy due process under the 14th amendment of the federal constitution and equivalent provisions of the Connecticut constitution and which will be entitled to recognition under the full faith and credit clause of the federal constitution." (Internal quotation marks omitted.) *Hibner* v. *Bruening*, 78 Conn. App. 456, 458, 828 A.2d 150 (2003). The court "may exercise jurisdiction over a person only if that person has been properly served with process, has consented to the jurisdiction of the court or has waived any objection to the court's exercise of personal jurisdiction." *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.*, 227 Conn. 175, 195–96, 629 A.2d 1116 (1993).

The defendant moves to dismiss on the ground that the plaintiff did not serve process in accordance with the requirements of the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, 20 U.S.T. 361 (1965) (Hague Convention). Instead, the plaintiff served process on the defendant in Italy by registered mail as outlined in the notice provision of the parties' agreement.[2] The defendant argues that Connecticut law clearly requires service of process on a foreign party to conform with the Hague Convention, which is through a central authority designated by each signatory country. See id., 362 (art. 2). The defendant contends that service by mail for the initial pleadings is not recognized by Italian law. In response, the plaintiff argues that the agreement expressly provides a mechanism of notice, including service of process, and that proper notice was provided as required under the terms of the agreement; that Connecticut courts have upheld the freedom to contract, including the method of notice; and that since arbitration is favored by Connecticut courts, one party should not be able to invalidate the contractual provision for notice in this agreement.

The threshold issue for the court to determine is whether the Hague Convention, rather than the notice provision of the agreement, is controlling for service of process in a foreign country for this court to exercise personal jurisdiction over the defendant. International

---

[2] The notice provision of the agreement is also included in paragraph 10 of the exclusive distributorship agreement and provides: "All notices, consents, approvals, requests, demands or other communications ('Notices') which either of the parties to this Agreement may desire or be required to give to the other party hereunder shall be in writing and shall be deemed properly given if (i) hand-delivered, [ii] sent by private or public mail carrier which provides evidence of delivery, or (iii) if the United States mail service is not on strike, sent by United States certified mail, postage prepaid, return receipt requested, to the other party at the addresses set forth in the first paragraph of this Agreement, or such other address as may be designated by Notice."

service of process may be made only in the manner provided in the articles of the Hague Convention, unless a country authorizes an alternate method for service of process. See id., pp. 362–63 (arts. 2–6). Specifically, article 5 of the Hague Convention provides in pertinent part: "The Central Authority of the State addressed shall itself serve the document or shall arrange to have it served by an appropriate agency, either—(a) by a method prescribed by its internal law for the service of documents in domestic actions upon persons who are within its territory, or (b) by a particular method requested by the applicant, unless such a method is incompatible with the law of the State addressed.

"Subject to sub-paragraph (b) of the first paragraph of this article, the document may always be served by delivery to an addressee who accepts it voluntarily.

"If the document is to be served under the first paragraph above, the Central Authority may require the document to be written in, or translated into, the official language or one of the official languages of the State addressed.

"That part of the request, in the form attached to the present Convention, which contains a summary of the document to be served, shall be served with the document." Id., pp. 362–63 (art. 5).

General Statutes § 52-59d requires service of process on foreign corporations in accordance with the Hague Convention.[3] The Hague Convention, an international treaty ratified by both the United States and Italy, "was

---

[3] General Statutes § 52-59d entitled "Service of process outside country to be in accordance with treaty or convention or court order" provides in relevant part: "(a) Notwithstanding any provision of the general statutes relating to service of process, civil process shall not be served outside of the United States of America in violation of any applicable treaty or convention, *including without limitation, the Hague Convention on Service of Process Abroad.*" (Emphasis added.)

intended to provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad. . . . The primary innovation of the Convention is that it requires each state to establish a central authority to receive requests for service of documents from other countries." (Citations omitted.) *Volkswagenwerk Aktiengesellschaft* v. *Schlunk*, 486 U.S. 694, 698, 108 S. Ct. 2104, 100 L. Ed. 2d 722 (1988). As a ratified treaty, the Hague Convention takes precedence over conflicting state laws under the supremacy clause of the United States constitution. See id., 699. The defendant maintains that the plaintiff did not comply with the Hague Convention when it served process by mail and in the English language, and, thus, this court should grant the motion to dismiss. In response, the plaintiff counters that the notice provisions outlined in the agreement between the parties do not violate the Hague Convention in spirit or form, because Italy has not formally objected to service by mail.

There is no appellate authority in Connecticut that is dispositive of the issue in the present case. This court, however, has previously joined with a line of Superior Courts that have rejected the argument that the Hague Convention permits service by registered mail, even if the receiving country fails to object affirmatively to mail service. "This court aligns itself with the prior Connecticut trial court decisions and concludes that [the Hague Convention] does not permit service of process to be sent by mail. Rather, in order to comply with the requirements of the Convention, it is necessary to follow the provisions of Article 5 in order to effect proper service of process. . . . Article 5 requires service of process to be made upon the Central Authority as designated by the receiving nation or by a method designated by the requester and compatible with that

law." *Johnson* v. *Pfizer, Inc.*, Superior Court, judicial district of New London, Docket No. 118821 (March 17, 2000) (26 Conn. L. Rptr. 690, 693) (*Hon. D. Michael Hurley*, judge trial referee); see also *Cavendish-Pell* v. *Howell*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-95-0145706 (December 16, 1995) (*Lewis, J.*) (service in United Kingdom); *Downes* v. *Ryobi America Corp.*, Superior Court, judicial district of Danbury, Docket No. 311959 (March 12, 1993) (*Fuller, J.*) (service in Japan); *Bourquin* v. *Melsungen*, Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-88-0346322S (September 13, 1988) (3 C.S.C.R. 803) (*Hennessey, J.*) (service in Germany); *Cardillo* v. *KIS France*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-87-0084909 (October 22, 1987) (2 C.S.C.R. 1188) (*Cioffi, J.*) (service in France); *Montalvo* v. *Nutmeg Foods*, Superior Court, judicial district of Fairfield, Docket No. 226591 (June 24, 1987) (2 C.S.C.R. 760) (*Harrigan, J.*) (service in Italy). By failing to serve process on the designated authority in Italy, the plaintiff did not comply with the Hague Convention rules. This court finds that the Hague Convention does not permit service of process by registered mail, which is not translated into the native language of the receiving country.

Moreover, the plaintiff's argument that the agreement between the parties governs the requirements for service of process is unpersuasive. The plaintiff relies on *Scoville* v. *Shop-Rite Supermarkets, Inc.*, 86 Conn. App. 426, 863 A.2d 211 (2004), cert. denied, 272 Conn. 921, 867 A.2d 838 (2005), to support its argument that the agreement between the parties governs the requirements for service of process, and therefore, the parties can alter service of process requirements by contract. *Scoville*, however, is limited in its application. In *Scoville*, the parties contracted for the type of notice required in actions *under* the contract, specifically the

notice required for the defendant to exercise its contractual option to extend its lease with the plaintiff. See id., 428. The parties did not modify any notice requirements for service of process, or any other court action. See id.

Even if the parties were free to contract for the method of service of process by agreement,[4] the notice provision in the present case refers to notice of regular business activities per the contract. As indicated by the word "hereunder," the notice provision applies to notices given to either party under the contract. Service of process to commence an action in a court does not fall within the provisions of the contract. It is outside the scope of the agreement, particularly absent any contract language to the contrary. Thus, the agreement between the parties does not control the proper method of notice, including service of process. The Hague Convention rules govern the requirements for service of process, and those were not complied with by the plaintiff regarding extrajudicial service of process.

## II

## CONCLUSION

Accordingly, the defendant's motion to dismiss is granted.

---

[4] "It is established well beyond the need for citation that parties are free to contract for whatever terms on which they may agree. . . . Accordingly, in private disputes, a court must enforce the contract as drafted by the parties . . . ." *Holly Hill Holdings* v. *Lowman*, 226 Conn. 748, 755–56, 628 A.2d 1298 (1993). Such contract terms can include designating a method for service of process. *Hartford Accident & Indemnity Co.* v. *Ace American Reinsurance Co.*, 279 Conn. 220, 223, 901 A.2d 1164 (2006) (express terms of contract between parties designated agents for service of process).